

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 NOV -3  PM 12: 44

PMC/DK/bw USAO#2014R00700

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | CRIMINAL NO. CCB-14-0513 |
| v. : | |
| **IRENEO TOMO TUALE,** : | (Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a); Aiding and Abetting, 18 U.S.C. § 2) |
| **Defendant.** : | |

...oooOooo...

## INFORMATION

### Introduction

The United States Attorney for the District of Maryland and the Acting Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice hereby charge:

At all times relevant to this Criminal Information:

1. Defendant Ireneo Tomo Tuale was the First Engineer of the *M/V Selene Leader* from on or about September 26, 2013, until on or about January 31, 2014. Defendant Tuale was an employee of Hachiuma Steamship Co., LTD ("Hachiuma"), a Japanese corporation with its offices in Japan. Hachiuma was the operator and manager of the *M/V Selene Leader*.

2. The *M/V Selene Leader* was a 59,637 gross ton ocean-going, cargo ship built in November 2008. The *M/V Selene Leader* was registered in Panama and had an International Maritime Organization (IMO) number of 9498597.

1

3. The *M/V Selene Leader* had an engine department headed by a Chief Engineer, and assisted by a First Engineer, Second Engineer, Third Engineer, and Three Oilers. The Chief Engineer had overall responsibility for the operation of the engine department, including making entries in the Oil Record Book. As the First Engineer of the *M/V Selene Leader*, Defendant Tuale was directly responsible for the operation and maintenance of all machinery on board the engine room of the vessel, supervised all engine department crew members, and reported directly to the Chief Engineer.

4. The operation of large marine vessels like the *M/V Selene Leader* generates large quantities of oily sludge and oily waste:

    a. Oily sludge is generated during the process of purifying fuel oil, lubricating oil, and other petroleum products, so that these products can be used in the engines on board the vessel. The oily sludge generated as a result of this process is stored on board the vessel in sludge tanks. Sludge may properly be disposed of either by incineration on board the vessel or by offloading it at a port through the use of a licensed hauler and disposal facility.

    b. Engine Department operations also generate large quantities of oil contaminated bilge waste created when water mixes in the bottom of the vessel, known as the "bilges," with oil that has leaked and dripped from the machinery and the lubrication and fuel system for the engines. These "oily mixtures" are often referred to as "bilge waste," "bilge slops," and "slops from bilges," and are collected, stored, and processed to separate the water from the oil and other wastes using a pollution prevention control device known as an Oily Water Separator (often referred to as an OWS) and oil-sensing device known as an Oil Content Monitor. Bilge

waste may only be discharged overboard after passing through an OWS to ensure that it contains 15 parts per million ("ppm") or less of oil, as measured by the Oil Content Monitor. If the Oil Content Monitor detects an oil content of greater than 15 ppm in the effluent, it sounds an alarm, and shuts down the pumps and/or diverts flow back to the bilges in order to prevent the discharge of greater than 15 ppm of oil overboard.

## LEGAL FRAMEWORK

5. The United States is part of an international regime that regulates the discharge of oil from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (together "MARPOL"). MARPOL is embodied in agreements that the United States has ratified and has been implemented in the United States by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §§ 1901, *et seq*. APPS makes it a crime for any person to knowingly violate MARPOL, APPS, or regulations promulgated under APPS. These regulations apply to all commercial vessels operating in the navigable waters of the United States or while in a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States.

6. MARPOL Annex I established international standards governing the treatment and disposal of oily mixtures generated from the machinery spaces of a vessel. Under MARPOL, machinery space waste may be discharged overboard into the ocean only if it does not exceed 15 ppm of oil and the ship has in operation required pollution prevention equipment.

7. Consistent with the requirements contained in MARPOL, APPS regulations require that vessels such as the *M/V Selene Leader* maintain a record known as an Oil Record

Book. The Oil Record Book must fully reflect tank to tank transfers of oil, the disposal of oil residue including sludge and waste oil, overboard discharges of bilge water that has accumulated in machinery spaces, and thus may be contaminated with oil, and any accidental or other exceptional discharges of oil or oily mixtures. MARPOL, Annex I Regulation 20 and 33 C.F.R. §§ 151.25(d) and (h). The Oil Record Book must be maintained onboard the vessel for not less than three years, and be readily available for inspection at all reasonable times. 33 C.F.R. § 151.25 (k).

8. The United States Coast Guard (U.S. Coast Guard), an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under Title 14, United States Code, section 89(a) to board vessels and conduct inspections and investigations of potential violations and to determine compliance with the MARPOL, APPS, and related regulations. In conducting inspections, U.S. Coast Guard personnel rely on the statements of the vessel's crew and documents, including information contained in the Oil Record Book. The U.S. Coast Guard is specifically authorized to examine a vessel's Oil Record Book. 33 C.F.R. §§ 151.23(a)(3) & (c).

## COUNT ONE
**(Act to Prevent Pollution from Ships)**

9. The United States Attorney and the Acting Assistant Attorney General re-allege and incorporate by reference herein paragraphs 1 through 8 and further charge:

10.  On or about January 30, 2014, in the Port of Baltimore and within the navigable waters of the United States and in the District of Maryland, the defendant,

**IRENEO TOMO TUALE**

did knowingly aid and abet the knowing failure to fully maintain an Oil Record Book for the *M/V Selene Leader* in which all tank to tank movements of oil and disposals of oil residue and discharges overboard and disposal otherwise of oily mixtures, slops from bilges and bilge waste that accumulated in machinery spaces were accurately recorded.  Specifically, on or about January 30, 2014, the defendant aided and abetted the failure to maintain an accurate Oil Record Book for the *M/V Selene Leader* while in the Port of Baltimore, by failing to disclose the transfers of oily waste from the bilges, transfers from the waste oil tank and the turbo washing changing station to the soot collection tank, and discharges overboard of oil residue and oily mixtures, including sludge, slops from bilges, and oily bilge waste made with the use of equipment and procedures that bypassed the Oily Water Separator and Oil Content Monitor.
33 U.S.C. § 1908(a); 18 U.S.C. § 2

_____  /pmc/
Rod J. Rosenstein
United States Attorney

_____  /pmc/
Sam Hirsch
Acting Assistant Attorney General

_____
Date